THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CORNELIUS LEWIS, Defendant-Appellant.

Fourth District No. 4—88—0483

Opinion filed November 9, 1989.

Daniel M. Kirwan and Dan W. Evers, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and Dale M. Wood, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

The defendant brings this appeal from his resentencing in the circuit court of Macon County. The defendant's convictions are a result of his participation in the armed robbery of the Citizens National Bank of Decatur (bank) on December 14, 1978. The evidence presented at the original trial and the resentencing hearing indicates a conspiracy to rob the bank existed between Willie Sangster, Maurice Farris, Bernice Lewis, and the defendant. Sangster was the leader of the conspiracy and recruited Farris and the Lewises to participate in the robbery.

On December 10, 1978, Sangster took Farris to the bank and explained the planned robbery and proposed escape. On December 12, Farris was introduced to the defendant and his sister Bernice at Sangster's residence. At that point, he informed the Lewises of Sangster's plans for the robbery. Later Farris took the Lewises to the bank and had them observe the routine of the bank guard and tellers and showed them the escape route.

On the morning of December 14, 1978, Farris drove the Lewises around Decatur to steal a car for use in the robbery. They drove into the parking lot of a day care center and observed Mary Comerford park her car and take her child into the center. Farris testified the defendant got into the back seat of Comerford's car armed with a

handgun. Comerford testified it was Farris in the back seat, and she was forced to drive away. She was later bound, gagged, and placed in the trunk of her car.

The Lewises then drove Comerford's car to the bank. Shortly before 8 a.m., five tellers and a bank guard were preparing to leave for a drive-in facility close to the bank. Each teller carried a black attache case with the cash required for that day's business. They had just entered the bank's van when the front passenger door of the van was opened by a tall, masked black male holding a handgun. The gunman leaned across the passenger seat and shot the guard. The guard died within a few minutes. The sliding passenger door of the van was opened by a second man. The gunman took the bank guard's gun, and the two men then proceeded to take three of the attache cases. They ran to Comerford's car and drove away.

The defendant and the other participants were arrested. The defendant was charged with armed robbery and aggravated kidnapping for his participation in the robbery. He was also accused of being the gunman who shot the bank guard and was additionally charged with murder. He and his sister were tried as codefendants. At their jury trial in 1979, he was found guilty of all three counts. The court ordered a presentence investigation for defendant's sister but not for the defendant. On June 22, 1979, he was sentenced to death for the murder conviction. No sentence was imposed on the armed robbery or aggravated kidnapping charges. The supreme court affirmed the circuit court's judgment and sentence on November 13, 1981. *People v. Lewis* (1981), 88 Ill. 2d 129, 430 N.E.2d 1346, *cert. denied* (1982), 456 U.S. 1011, 73 L. Ed. 2d 1308, 102 S. Ct. 2307.

On March 31, 1986, the defendant filed a petition for a writ of *habeas corpus* in the Federal district court. The district court issued a writ vacating the sentence of death and ordering a new sentencing hearing. (*United States ex rel. Lewis v. Lane* (C.D. Ill. 1987), 656 F. Supp. 181.) On appeal the Seventh Circuit Court of Appeals affirmed the district court's issuance of the writ. *Lewis v. Lane* (7th Cir. 1987), 832 F.2d 1446, *cert. denied* (1988), 488 U.S. 829, 102 L. Ed. 2d 59, 109 S. Ct. 83.

In the resentencing before the circuit court, the State again requested a death penalty hearing be held. A sentencing hearing was held before a jury on May 11, 1988. In the first phase of the death penalty hearing, the jury found the defendant was eligible for the death penalty under section 9—1(b)(6) of the Criminal Code of 1961. (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(b)(6).) In the second phase of the hearing, the jury found the death penalty should not be imposed

on the defendant.

On June 27, 1988, the defendant was sentenced to a term of natural life imprisonment for the murder conviction. The circuit court also imposed a 30-year term of imprisonment for armed robbery and a consecutive 15-year term for the aggravated kidnapping. On June 30, 1988, a notice of appeal was filed.

Plaintiff on appeal maintains the failure of the trial court to order a presentence report prior to his 1988 resentencing is reversible error which requires this court to remand for yet another resentencing. He relies on section 5—3—1 of the Unified Code of Corrections, which requires the court to order a presentence investigation before a defendant may be sentenced on a felony conviction. Ill. Rev. Stat. 1987, ch. 38, par. 1005—3—1.

The Illinois Supreme Court in *People v. Youngbey* (1980), 82 Ill. 2d 556, 413 N.E.2d 416, held the presentence report requirement of section 5—3—1 was a statutory mandate which could not be waived by a defendant except as allowed by statute where the parties agree to the imposition of a specific sentence. In *People v. Harris* (1985), 105 Ill. 2d 290, 473 N.E.2d 1291, the supreme court held substantial compliance with the report requirement was not sufficient to fulfill the statutory mandate and instituted a *per se* compliance standard which required the court to order a written presentence report.

*People v. Gaines* (1981), 88 Ill. 2d 342, 430 N.E.2d 1046, raised the question presented here, whether a presentence report is required before sentencing in a capital murder case where the jury finds there are mitigating factors which preclude the imposition of the death penalty. The supreme court declined to decide the issue on that occasion, finding it was not required to do so by its holding in that case. The court then enunciated the rule that chapter V of the Unified Code of Corrections, which requires a presentence report in all felony cases, is not applicable to capital cases because the court had no discretion in sentencing. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—1—1 *et seq.*) Though not relying on it, the court also noted that it failed to see how the preparation of a presentence report could have provided additional relevant information. The court again reaffirmed its holding that a sentencing hearing in a capital murder case substantially fulfills the purpose of a presentence report in *People v. Madej* (1985), 106 Ill. 2d 201, 478 N.E.2d 392, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 268. The court also noted defects in a presentence report could be waived and the defendant did not object to the imposition of sentence without the report at the hearing.

While we concede the interplay of the supreme court's opinions in

this area gives some color to the defendant's arguments, we find they are ultimately without merit. The defendant urges us to a superficial application of the *per se* rule to the facts of this case. We decline to adopt defendant's rationale, finding it preferable to apply the underlying reasoning of the supreme court's decisions to the facts presented here.

Though we acknowledge the wisdom of the *per se* rule in a typical felony case, we fail to perceive what good would come from the application of this rule here. Given the extensive nature of the evidence presented in this and other capital sentencing hearings, there is little if any additional information which could be added by a presentence report. The defendant here has not suggested any actual prejudice, and our review of the record suggests the only additional information which would be generated by such a report is the availability of special resources in the community to aid in the defendant's rehabilitation. Given the nature of the defendant's crimes, his criminal record, and the trial court's consideration of his rehabilitative potential, information concerning these resources would have had minimal value.

We also note the defendant here did not object to the lack of a presentence report at his sentencing hearing. In fact, defense counsel induced the court to proceed without a report after the court indicated it would be necessary to order such a report. The defendant, who is by no means unsophisticated, concurred in the recommendation of counsel with the stipulation that he could present any additional information he might desire. (See *People v. Heard* (1947), 396 Ill. 215, 219-20, 71 N.E.2d 321, 323 (defendant may not ask court to proceed in a given manner and then assign as error in a court of review the ruling or action which he procured).) While we do not rely on an inducement argument in reaching our decision, we find it worthwhile to note both defendant and counsel recognized no additional, relevant information would be generated by the report and every opportunity was given to defendant to present whatever information he thought relevant.

██ ██ For the reasons stated above, we find the supreme court has indicated capital cases as a class are taken out of the operation of chapter V. A trial court need not direct preparation of a presentence report in a capital murder case where the defendant is found ineligible for the death sentence and the usual requirements of a sentencing hearing in a capital case are met. The trial court did not err in resentencing the defendant on his murder conviction.

The defendant next argues the trial court lacked jurisdiction to sentence him to imprisonment on two crimes for which he was con-

victed but not sentenced in 1979. At his original trial, the defendant was convicted of three crimes: murder, armed robbery, and aggravated kidnapping. The jury found the defendant eligible for the death sentence, and on June 22, 1979, the presiding judge imposed a death sentence. However, this sentence was imposed only for the murder; no sentence was imposed for the armed robbery and aggravated kidnapping.

 Clearly, a trial court does not retain jurisdiction to sentence the defendant indefinitely. Post-trial activity, including imposition of sentence, may not be indefinitely postponed. The question of whether a given period of delay is so unreasonable as to deprive the court of its authority to proceed is dependent in substantial measure upon the circumstances. (*People ex rel. Houston v. Frye* (1966), 35 Ill. 2d 591, 221 N.E.2d 287.) In *People ex rel. Fensky v. Leinecke* (1919), 290 Ill. 560, 125 N.E. 513, the supreme court held that once the defendant began serving his sentence the trial court was without jurisdiction to vacate or change the judgment. Under the circumstances here, where the defendant has already been imprisoned for nine years and sentencing on the additional convictions comes long after the original trial, the trial court has no authority to sentence the defendant on the additional charges.

 The State maintains, however, the revestment doctrine was sufficient to vest the circuit court with jurisdiction to sentence the defendant on the two additional charges. For the rule of revestment to apply, the parties must actively participate without objection in proceedings which are inconsistent with the merits of the prior judgment. (*People v. Kaeding* (1983), 98 Ill. 2d 237, 456 N.E.2d 11.) Here, the defendant challenged only the sentence on his murder conviction. The proceedings in this case were conducted pursuant to a mandate for resentencing from the Federal district court. While the trial court had jurisdiction to resentence the defendant on his murder conviction, neither the defendant's appeal of the murder sentence nor the mandate of the Federal court served to revest the court with jurisdiction as to the other charges.

At the resentencing hearing, the circuit court took into account the two prior out-of-State convictions of the defendant in resentencing him on the Illinois convictions. The defendant alleges these prior convictions were obtained in violation of his constitutional rights. He maintains that once he raised this question, the trial court could not take these convictions into account in resentencing unless it further investigated the defendant's allegations.

 The defendant cites numerous Federal court cases generally

supporting the proposition that a prior conviction obtained in violation of the defendant's constitutional rights cannot be used for sentencing. However, in so doing the defendant attempts to leapfrog an important initial step. Before such a claim can be considered, it must be properly initiated in the trial court. Before the defendant can deny the State the opportunity to employ prior convictions, there must be an evidentiary hearing and a determination that the convictions were in fact obtained in violation of the defendant's rights. The petition must make a showing of a violation of constitutional rights to be entitled to an evidentiary hearing. To accomplish this, allegations in the petition must be supported by the record in the case or by accompanying affidavits. *People v. Gaines* (1984), 105 Ill. 2d 79, 473 N.E.2d 868.

■ In this case, the defendant's allegations were raised in a written *in limine* motion before the trial court without affidavits or any attempt to substantiate the allegations. The defendant failed to provide the court with any substantial basis on which to proceed in an evidentiary hearing to determine whether the convictions were proper or not. It is the burden of the defendant to provide the trial court with this information, and merely raising the issue without more is insufficient to bring the sentencing process to a halt and require an evidentiary hearing.

■ ■ Last, defendant argues his sentence for natural life imprisonment on the murder conviction is excessive. Defendant here does not argue the court was unaware of the factors in mitigation of his crime nor does he suggest it failed to take these into account when sentencing him. The record shows the court was cognizant of both the factors in aggravation and mitigation when it sentenced the defendant. As this court has recently held, imposition of sentence is a matter within the purview of the trial court, and its decision is entitled to great deference and weight. A sentence within the statutory range described for the offense will not be disturbed on review absent an abuse of discretion. *(People v. Bogan* (1989), 185 Ill. App. 3d 129, 540 N.E.2d 1135.) A sentence of natural life imprisonment may be imposed not only where a murder involves torture or the unnecessary infliction of pain, but where a defendant has a history of criminal activity, has acted with premeditation and deliberation, or has displayed a total lack of remorse. *(People v. Montague* (1989), 182 Ill. App. 3d 737, 538 N.E.2d 669.) The defendant here has completely failed to cite any authority which would require us to find the imposition of a sentence of natural life imprisonment is an abuse of discretion under these facts. In this case, the defendant has a history of criminal activity and by his unwillingness to admit his guilt has displayed a total

lack of remorse for his actions. The trial court did not abuse its discretion in sentencing him to natural life.

For the foregoing reasons the defendant's natural life sentence on the murder conviction is affirmed. The prison sentences imposed for the robbery and aggravated kidnapping convictions are reversed.

Affirmed in part; reversed in part.

SPITZ and GREEN, JJ., concur.