THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD BOSTON, Defendant-Appellant.

First District (2nd Division)   No. 1—93—0441

Opinion filed March 28, 1995.

Michael J. Pelletier and Karen Daniel, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

On August 17, 1991, Roberto Velasquez, a 23-year-old medical student, was robbed and stabbed to death at a gas station on Roosevelt Road in the City of Chicago. Defendant Donald Boston and co-defendant Toney Washington were subsequently arrested and charged by indictment with first degree murder (Ill. Rev. Stat. 1991, ch. 38, par. 9—1 (now 720 ILCS 5/9—1 (West 1992))) and armed robbery (Ill. Rev. Stat. 1991, ch. 38, par. 18—2 (now 720 ILCS 5/18—2 (West 1992))).[1] Defendants were tried in simultaneous jury trials.

During *voir dire* in defendant's trial, the judge examined prospective juror Leona Ford, who stated that she was an administrative assistant with the Cook County State's Attorney's office. She knew a possible witness, Assistant State's Attorney Robert Buckley, and she worked with his sister.[2] She stated that she would not give Buckley more credence than other witnesses. She also stated that she was the friend of a police officer and a public defender. She responded to the judge's inquiry regarding her impartiality by indicating that she could be fair and impartial.

After defense counsel raised concerns about Ford, the judge questioned her again. She stated that she worked for the supervisor of the juvenile division and that she had had the job for 18 months. The judge then held a conference in his chambers. He noted that each side had seven peremptory challenges and that defendant had exercised all seven. Defense counsel argued that Ford should be excused for cause because she held a "high position in the State's Attorney's office." The judge refused to grant defendant an additional

---

[1]We affirmed Toney Washington's convictions and sentences in a Rule 23 order. (*People v. Washington* (1st Dist. November 15, 1994), No. 1—93—0410.) The facts of the case are set out in detail in that order.

[2]Buckley did not testify at trial.

peremptory challenge or to excuse Ford for cause, explaining that she did not deal with criminal matters on her job, that she indicated that she could be fair, and that he found her to be "straightforward" and "candid."

Evidence adduced at trial revealed the following. The offense occurred at about 12:15 a.m., just after Velasquez had purchased gas and some gum. The cashier, Hattie Green, witnessed one man, whom she could not identify, attacking Velasquez as he returned to his car. Pamela Mixon and Nikkie Davis, who were waiting for their friend to purchase gas, also witnessed the attack. Mixon identified defendant as the stabber and Davis identified codefendant as his accomplice.

The jury convicted defendant of armed robbery and first degree murder. During the first phase of defendant's sentencing hearing, the judge found him eligible for the death penalty. After hearing testimony regarding defendant's convictions for three armed robberies when he was 16 years old, the judge found a mitigating factor and declined to impose the death penalty. He then sentenced defendant to natural life in the custody of the Illinois Department of Corrections for first degree murder and to a concurrent 30-year sentence for armed robbery. Without objection by defendant, the judge imposed sentence in the absence of a presentence investigation report. Defendant timely appealed.

Defendant argues that the trial court abused its discretion in refusing to excuse juror Ford for cause, thereby denying him his constitutional right to a fair trial. He contends that by allowing an employee of the Cook County State's Attorney to serve on his jury, the court "destroy[ed] any appearance of an impartial jury."

The State initially contends that defendant waived this issue, because although he objected at trial, he did not include this claim of error in his post-trial motion. However, we nonetheless consider this issue because it concerns a fundamental constitutional right. See 134 Ill. 2d R. 615(a).

The right to an impartial jury is so fundamental to due process that any infringement of that right requires reversal by a reviewing court. (*People v. Cole* (1973), 54 Ill. 2d 401, 411, 298 N.E.2d 705, 711.) The purpose of *voir dire* is to eliminate prospective jurors who are not impartial. (*People v. Peeples* (1993), 155 Ill. 2d 422, 463, 616 N.E.2d 294, 313, *cert. denied* (1993), 510 U.S. 1016, 126 L. Ed. 2d 578, 114 S. Ct. 613.) Impartiality is not a technical concept; rather, it is "a state of mind." (*Cole*, 54 Ill. 2d at 413, 298 N.E.2d at 712; see also *Peeples*, 155 Ill. 2d at 462, 616 N.E.2d at 312-13.) The burden of showing that a juror was partial rests on the party challenging the juror; more

than a mere suspicion of bias must be demonstrated. (*Cole*, 54 Ill. 2d at 413-15, 298 N.E.2d at 712-13.) The determination of whether a prospective juror is biased is within the sound discretion of the trial judge, whose decision will not be reversed unless it is against the manifest weight of the evidence. *Cole*, 54 Ill. 2d at 414, 298 N.E.2d at 712; *People v. Buie* (1992), 238 Ill. App. 3d 260, 277, 606 N.E.2d 279, 290, *appeal denied* (1993), 151 Ill. 2d 568, 616 N.E.2d 339.

Defendant relies heavily on the fourth district case, *People v. Green* (1990), 199 Ill. App. 3d 927, 557 N.E.2d 939, *appeal denied* (1990), 133 Ill. 2d 564, 561 N.E.2d 699, *cert. denied* (1991), 498 U.S. 1095, 112 L. Ed. 2d 1069, 111 S. Ct. 984, for his contention that juror Ford was presumptively unfit to serve on his jury. In *Green*, a prospective juror was, like Ford in the present case, a secretary in the juvenile division of the State's Attorney's office. When defendant's challenge for cause was denied, he used a peremptory challenge to keep her off of the jury. While finding that any claim of error in this regard had not been properly preserved for review, the appellate court nonetheless expressed its disapproval of the trial judge's denial of the challenge for cause. (*Green*, 199 Ill. App. 3d at 930, 557 N.E.2d at 941.) The court noted that the prospective juror was an at-will employee who knew the State's Attorney. It found support in *Marcin v. Kipfer* (1983), 117 Ill. App. 3d 1065, 454 N.E.2d 370, a medical malpractice case. In *Marcin*, the court reversed and remanded for a new trial after holding that two jurors who were the defendant's patients should have been excluded from the jury. The *Marcin* court observed that the physician-patient relationship has traditionally been one of trust and confidence and that for the jurors to have found for the plaintiff, they would have had to also find that their physician was incompetent. *Marcin*, 117 Ill. App. 3d at 1067-68, 454 N.E.2d at 371-72.

We question the *Green* court's reliance on *Marcin*. A finding for the defendant in *Green* would not have required the prospective juror, if she had served, to deprecate a person with whom she had a close relationship. The *Green* court's implicit concern that the prospective juror would feel that her job was at risk or that she would be disloyal to the State's Attorney if she voted for the defense appears to us to have been unfounded. (See *Green*, 199 Ill. App. 3d at 930, 557 N.E.2d at 941.) The prospective juror stated unequivocally that she could be fair and impartial, and the trial judge had a superior opportunity to assess her credibility. Moreover, we have never recognized a *per se* rule disqualifying prospective jurors who are employed by the government. *People v. Johnson* (1991), 215 Ill. App. 3d 713, 725, 575 N.E.2d 1247, 1254 (probation officer was not *per se* unfit to serve on jury);

*People v. Jones* (1987), 162 Ill. App. 3d 487, 493, 515 N.E.2d 471, 475 (a prospective juror's previous or present employment as a police officer is not sufficient reason to sustain a challenge for cause), *appeal denied* (1987), 162 Ill. App. 3d 487, 515 N.E.2d 471; *People v. Washington* (1984), 121 Ill. App. 3d 479, 488, 459 N.E.2d 1029, 1036-37 (the presence on the defendant's jury of a police committee member who dealt only with finances and appointments did not deprive him of a fair trial); see also 47 Am. Jur. 2d *Jury* § 327, at 897 (1969 & 1994 Supp.) ("Government employees are not disqualified *per se* for jury service even in a case where the government is a party, regardless of whether the case is civil or criminal").

Similarly, Illinois courts have rejected the adoption of a *per se* rule excluding jurors based on their relationships with persons connected to the trial. (*People v. Leger* (1992), 149 Ill. 2d 355, 384-86, 597 N.E.2d 586, 598-99 (no error in permitting a juror to serve, even though she knew the murder victim's husband and her daughter attended school with the victim's daughter, when the juror unequivocally stated that she could be fair), *cert. denied* (1993), 507 U.S. 923, 122 L. Ed. 2d 683, 113 S. Ct. 1291; *People v. Johnson* (1992), 149 Ill. 2d 118, 136-38, 594 N.E.2d 253, 263 (no error in allowing juror to serve whose brothers-in-law were police officers when the defendant failed to show that the juror had "a disqualifying state of mind as will raise the presumption of partiality"), *cert. denied* (1993), 506 U.S. 1056, 122 L. Ed. 2d 138, 113 S. Ct. 986; *People v. Cobb* (1989), 189 Ill. App. 3d 86, 89-90, 544 N.E.2d 1257, 1257-59 (denial of challenge for cause upheld even though the prospective juror's son was the assistant State's Attorney who signed the information charging the defendant with the offense), *appeal denied* (1989), 128 Ill. 2d 666, 548 N.E.2d 1072; *People v. Gaston* (1984), 125 Ill. App. 3d 7, 9, 465 N.E.2d 631, 633 (juror's status as a part-time police officer did not automatically disqualify him), *cert. denied* (1985), 469 U.S. 1221, 84 L. Ed. 2d 351, 105 S. Ct. 1209.) As the *Cobb* court reasoned, to rule as a matter of law that a prospective juror's familial relationship with an attorney automatically disqualified the juror would ignore the supreme court's admonition in *Cole* that a determination of a juror's state of mind must be based on evidence, not mere suspicion. (*Cobb*, 189 Ill. App. 3d at 89, 544 N.E.2d at 1259, citing *Cole*, 54 Ill. 2d at 415, 298 N.E.2d at 713.) This reasoning applies with equal force to prospective jurors who are employed by the government.

■ We repeat that in the case at bar, juror Ford stated unequivocally that she could be fair to both parties in the trial; her employment as an administrative assistant to the supervisor of the juvenile division of the State's Attorney's office did not involve criminal work;

and the judge, who observed her demeanor, found that she was candid and straightforward. (See *People v. Davis* (1983), 95 Ill. 2d 1, 19, 447 N.E.2d 353, 361-62, *cert. denied* (1983), 464 U.S. 1001, 78 L. Ed. 2d 697, 104 S. Ct. 507.) (Compare *People v. Stremmel* (1994), 258 Ill. App. 3d 93, 113-14, 630 N.E.2d 1301, 1313 (in a case that may have hinged on a detective's testimony, a juror's relationship to the case was so close that he should have been excused for cause when the juror was a 19-year veteran of the city police department and knew all 11 officers who testified at trial), *appeal denied* (1994), 157 Ill. 2d 518, 642 N.E.2d 1298; *People v. Reinbold* (1993), 247 Ill. App. 3d 498, 504, 617 N.E.2d 436, 441 (trial judge's determination that a prospective juror could be fair and impartial was against the manifest weight of the evidence when she indicated that she believed that the defendant had to prove his innocence), *appeal denied* (1993), 153 Ill. 2d 567, 624 N.E.2d 814; *Gaston*, 125 Ill. App. 3d at 11, 465 N.E.2d at 634 (an evidentiary hearing was necessary to determine if a juror had been biased when he failed to disclose during *voir dire* that he was part-time police officer).) Accordingly, the judge's determination in the instant case that juror Ford could be impartial was not against the manifest weight of the evidence and defendant was not denied a fair trial by her presence on the jury.

Defendant next contends that once the judge rejected the death penalty, he was required by statute to consider a presentence investigation report prior to imposing sentence. He argues that because the homicide statute directs the court to sentence the defendant under chapter V of the Unified Code of Corrections (the Code) when death is not imposed, the trial court in the present case erred by not ordering a presentence investigation report as required by section 5—3—1 of the Code. (See Ill. Rev. Stat. 1991, ch. 38, par. 9—1(h) (now 720 ILCS 5/9—1(h) (West 1992)); Ill. Rev. Stat. 1991, ch. 38, par. 1005—3—1 (now 730 ILCS 5/5—3—1 (West 1992)).) The State responds that a presentence report is unnecessary when the court has held a capital offense sentencing hearing and considered all of the information that the report would contain.

Under the Code, presentence investigation reports are required when the court is sentencing the defendant for a felony. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—3—1 (now 730 ILCS 5/5—3—1 (West 1992)).) A presentence report must contain the following information:

"(1) the defendant's history of delinquency or criminality, physical and mental history and condition, family situation and background, economic status, education, occupation and personal habits;

(2) information about special resources within the community which might be available to assist the defendant's rehabilitation ***;

(3) the effect the offense committed has had upon the victim or victims thereof, and any compensatory benefit that various sentencing alternatives would confer on such victim or victims;

(4) information concerning the defendant's status since arrest ***;

(5) when appropriate, a plan, based upon the personal, economic and social adjustment needs of the defendant, utilizing public and private community resources as an alternative to institutional sentencing; and

(6) any other matters that the investigatory officer deems relevant or the court directs to be included." (Ill. Rev. Stat. 1991, ch. 38, par. 1005—3—2 (now 730 ILCS 5/5—3—2 (West 1992)).)[3]

No presentence report is necessary when the parties agree to the imposition of a certain sentence. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—3—1 (now 730 ILCS 5/5—3—1 (West 1992)); *People v. Youngbey* (1980), 82 Ill. 2d 556, 561, 413 N.E.2d 416, 419.) The mandatory nature of the report flows from the recognition that its purpose is to inform the sentencing judge of relevant facts about the defendant's background necessary to a sentencing determination. *Youngbey*, 82 Ill. 2d at 564, 413 N.E.2d at 421.

■ However, the supreme court has held that a presentence investigation report is not necessary in capital cases because the capital sentencing hearing serves the same function of apprising the judge of the defendant's background. This is true in all capital cases, even if the court is also sentencing the defendant for other felony convictions. *People v. St. Pierre* (1992), 146 Ill. 2d 494, 518-19, 588 N.E.2d 1159, 1171, *cert. denied* (1992), 506 U.S. 942, 121 L. Ed. 2d 291, 113 S. Ct. 381; *People v. Bean* (1990), 137 Ill. 2d 65, 136-37, 560 N.E.2d 258, 290-91, *cert. denied* (1991), 499 U.S. 932, 113 L. Ed. 2d 270, 111 S. Ct. 1338.

As defendant notes, the supreme court has addressed this issue only when the defendant actually received the death penalty. The court has not decided the precise issue of whether a presentence report is necessary when the judge or jury determines that the defendant should not be sentenced to death and the defendant is subsequently sentenced for other felonies. (See *People v. Gaines* (1981), 88 Ill. 2d 342, 373, 430 N.E.2d 1046, 1061, *cert. denied* (1982), 456 U.S. 1001, 73 L. Ed. 2d 1295, 102 S. Ct. 2285.) However, in *People v. Lewis*

---

[3]Sections (2) and (5) are irrelevant in cases, such as the one at bar, where the trial judge must sentence the defendant to a prison term. See Ill. Rev. Stat. 1991, ch. 38, par. 9—1(h) (now 720 ILCS 5/9—1(h) (West 1993)).

(1989), 191 Ill. App. 3d 155, 547 N.E.2d 599, *appeal denied* (1990), 131 Ill. 2d 563, 553 N.E.2d 399, the appellate court held that a presentence report was unnecessary in such a situation, stating that the "trial court need not direct preparation of a presentence report in a capital murder case where the defendant is found ineligible for the death sentence and the usual requirements of a sentencing hearing in a capital case are met." (*Lewis*, 191 Ill. App. 3d at 160, 547 N.E.2d at 602.) The court noted that a *per se* rule requiring the report in "a typical felony case" was wise, but found that the report would serve no purpose when the court has been presented with extensive evidence at the capital sentencing hearing. *Lewis*, 191 Ill. App. 3d at 160, 547 N.E.2d at 602.

In contrast, in an earlier case, *People v. Calhoun* (1986), 144 Ill. App. 3d 829, 494 N.E.2d 498, the court held that a presentence report was required under similar circumstances. However, it also found that the defendant suffered no prejudice, because the trial judge had been made aware of the information specified in the statute at the capital sentencing hearing. Accordingly, the court found that this "technical or formal error" did not require remand for resentencing. *Calhoun*, 144 Ill. App. 3d at 836-37, 494 N.E.2d at 503-04.

Defendant argues that *Calhoun* conflicts with *People v. Harris* (1985), 105 Ill. 2d 290, 473 N.E.2d 1291. However, *Harris* is distinguishable from both *Calhoun* and *Lewis*. In *Harris*, the supreme court held that trial courts must consider a presentence report when sentencing defendants for felonies after revoking probation. (*Harris*, 105 Ill. 2d at 300-01, 473 N.E.2d at 1295.) In *Harris*, unlike the case at bar, the defendants in consolidated cases were convicted of burglary; the trial court in each case did not have the benefit of the information presented at a capital sentencing hearing.

The reasoning of the supreme court cases dealing with capital offenses is more germane to an analysis of the present case, despite defendant's assertion that they are distinguishable because in each the defendant actually received the death penalty. The basis of the courts' decisions was not the actual sentence the defendant received, but rather the fact that the judge was apprised of all the information a presentence report would contain. See *St. Pierre*, 146 Ill. 2d at 519, 588 N.E.2d at 1171; *Bean*, 137 Ill. 2d at 136-37, 560 N.E.2d at 290-91; *People v. Madej* (1985), 106 Ill. 2d 201, 211-12, 478 N.E.2d 392, 396, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 268; *People v. Gaines*, 88 Ill. 2d at 373, 430 N.E.2d at 1061-62.

Defendant also argues that, unlike the *Calhoun* and *Lewis* defendants, he was prejudiced by the absence of a presentence report. The record indicates that the judge ordered two psychological evalua-

tions of defendant. On November 22, 1991, Dr. Gerson H. Kaplan, a staff psychiatrist at the Psychiatric Institute of the Cook County circuit court, concluded that defendant was mentally fit for trial and that he was legally sane. He opined that defendant was malingering, "pretending to be mentally disturbed and not know anything." Dr. Albert H. Stipes, also a staff psychiatrist at the Psychiatric Institute, examined defendant on July 10, 1992, and determined that he was legally sane and fit for trial. He also opined that defendant was malingering. At defendant's capital sentencing hearing, the court learned that he had been convicted of robbery when he was 16 in a stipulated bench trial; that at that time he may have been acting under the influence of his older brother; that he was raised in the Henry Horner homes; that his family had been on public aid his entire life; that he had had limited educational opportunities; and that he received Social Security benefits because of a "nervous mental condition." Furthermore, at trial, the judge became aware that defendant had two sisters and that he was married. Defendant testified that he had "bad nerves" and "slight seizures" which were the basis for his receiving Social Security disability benefits, that he quit school in the eighth grade because he was "kind of slow," and that he was unemployed at the time of the offense. He stated that after grammar school, he "tried to hustle beer cans or sweep around stores or something."

The court thus was aware of the information which would have been contained in the presentence report, thereby obviating the need for a written report. (See Ill. Rev. Stat. 1991, ch. 38, par. 1005—3—2 (now 730 ILCS 5/5—3—2 (West 1992)).) Consequently, defendant suffered no prejudice from the absence of the report and resentencing is unnecessary. See *Madej*, 106 Ill. 2d at 211-12, 478 N.E.2d at 396 (holding that where the judge presided at the guilt and sentencing phases of the defendant's trial and was aware of his social background, and medical and physical conditions, he was adequately informed to "substantially fulfill the purpose of a presentence investigation report").

Based upon the foregoing, we affirm defendant's conviction and sentence.

Affirmed.

DiVITO and McCORMICK, JJ., concur.